**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOAO SLEIMAN ) | | CASE NO. |
| 4603 Clare Drive ) | | |
| Columbus, Ohio 43228, ) | | JUDGE: |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | **COMPLAINT FOR DAMAGES** |
| ) | | **AND INJUNCTIVE RELIEF** |
| FEDEX SUPPLY CHAIN, INC ) | | |
| c/o CT Corporation System. ) | | **JURY DEMAND ENDORSED** |
| 4400 Easton Commons Way, Ste. 125 ) | | **HEREIN** |
| Columbus, Ohio 43219 ) | | |
| ) | | |
| Defendant. ) | | |

Plaintiff, Joao Sleiman, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

**PARTIES AND VENUE**

1. Sleiman is a resident of the city of Columbus, Franklin County, Ohio.

2. At all times herein, Sleiman was acting within the scope of his employment.

3. FedEx Supply Chain, Inc. ("FedEx") is a foreign corporation with its principal place of business located at Columbus, Ohio.

4. FedEx is and, at all times hereinafter mentioned, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. FedEx is and, at all times hereinafter mentioned, was an employer within the meaning of 28 U.S.C. § 2000e *et seq.* ("Title VII").

## JURISDICTION

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Sleiman is alleging a Federal Law Claim under Title VII.

7. All material events alleged in this Complaint occurred in Franklin County, Ohio.

8. This Court has supplemental jurisdiction over Sleiman's state law claims pursuant to 28 U.S.C. § 1367 as Sleiman's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Within 300 days of the conduct alleged below, Sleiman filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2019-01639 against FedEx and Charge No. 532-2021-00480 ("Sleiman EEOC Charge").

11. On or about January 26, 2021 the EEOC issued and mailed a Notice of Right to Sue letter to Sleiman regarding the Charges of Discrimination brought by Sleiman against FedEx.

12. Sleiman received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which have been attached hereto as Plaintiff's Exhibit A.

13. Sleiman has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letters.

14. Sleiman has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

15. Sleiman is a former employee of FedEx.

16. On or about July 2, 2019, Sleiman began working for Defendant.

17. Sleiman is originally from Brazil.

18. Sleiman has an accent.

19. Sleiman suffers from Type II Diabetes.

20. Sleiman Type II Diabetes constituted a physical impairment.

21. Sleiman's Type II Diabetes substantially impaired one or more of his major life activities, including working.

22. As a result of the Type II Diabetes, Sleiman has a record of physical impairment.

23. As a result of suffering from the Type II Diabetes, Sleiman is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

24. In the alternative, Defendant perceived Sleiman as being disabled.

25. In the alternative, Defendant perceived that Sleiman's Type II Diabetes constituted a physical impairment.

26. In the alternative, Defendant perceived Sleiman's disability to substantially impair one or more of his major life activities, including working.

27. Despite this actual or perceived disabling condition, Sleiman was still able to perform the essential functions of his job.

28. In or around December 2019, Monica Davis became Sleiman's supervisor.

29. In or around January 2020, Sleiman received employee of the month.

30. In or around December 2019, Sleiman informed Davis that he has Type II Diabetes.

31. In or about March 2020, Sleiman complained Davis, that Defendant was not adequately cleaning the facility.

32. In or about March 2020, Sleiman complained to Davis that Defendant was not taking precautions to prevent COVID-19.

33. In or about March 2020, Sleiman complained to Davis Defendant was not allowing employees to practice safe social distancing.

34. In or about March 2020, Sleiman complained to Davis that Sleiman complained that the bathrooms were not being properly sanitized.

35. In or about March 2020, Sleiman complained to Davis he felt his health was at increased risk and he did not feel safe.

36. In or about March 2020, Sleiman complained to Davis due to his Diabetes, he felt his health was deteriorating.

37. In or about March 2020, Sleiman complained to Davis that his co-worker Abdulai Azzi was being treated unfairly.

38. Azzi is Muslim.

39. Sleiman was often teased because of his accent.

40. Defendant treated foreign-born employees unfavorably.

41. Sleiman complained multiple times to Human Resources and Davis that foreign-born employees were treated unfavorably.

42. Paragraphs 31 through 40 are hereinafter referred to as "Sleiman's Discrimination Complaints".

43. In June 2020, Sleiman again complained to Davis that minorities were being treated differently and unfairly. ("Sleiman's Final Discrimination Complaint")

44. In or about June 12, 2020, Sleiman complained to Davis about the discrimination he was facing.

45. On or about June 12, 2020, Defendant terminated Sleiman's employment. ("Termination")

46. Defendant has a progressive disciplinary policy ("Discipline Policy").

47. A verbal warning is the lowest level of discipline in the Discipline Policy.

48. Sleiman did not receive a verbal warning before the Termination.

49. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

50. Sleiman did not receive a written warning before the Termination.

51. A termination is the highest level of discipline in the Discipline Policy.

52. Defendant knowingly skipped progressive disciplinary steps in terminating Sleiman.

53. Defendant knowingly terminated Sleiman's employment.

54. Defendant knowingly took an adverse employment action against Sleiman.

55. Defendant knowingly took an adverse action against Sleiman.

56. Defendant intentionally skipped progressive disciplinary steps in terminating Sleiman.

57. Defendant intentionally terminated Sleiman's employment.

58. Defendant intentionally took an adverse employment action against Sleiman.

59. Defendant intentionally took an adverse action against Sleiman.

60. Defendant knew that skipping progressive disciplinary steps in terminating Sleiman would cause Sleiman harm, including economic harm.

61. Defendant knew that terminating Sleiman would cause Sleiman harm, including economic harm.

62. Defendant willfully skipped progressive disciplinary steps in terminating Sleiman.

63. Defendant willfully terminated Sleiman's employment.

64. Defendant willfully took an adverse employment action against Sleiman.

65. Defendant willfully took an adverse action against Sleiman.

66. Defendant terminated Sleiman's employment because of his disability.

67. Defendant terminated Sleiman's employment because of his perceived disability.

68. Defendant terminated Sleiman's employment because of his national origin.

69. Defendant terminated Sleiman's employment because he complained about disability discrimination.

70. Defendant terminated Sleiman's employment because he complained about national origin discrimination.

71. Defendant terminated Sleiman's employment because he complained about unsafe work conditions due to COVID-19 discrimination.

72. Defendant retaliated against Sleiman for Sleiman's Discrimination Complaints.

73. Defendant retaliated against Sleiman for Sleiman's Final Discrimination Complaint.

74. As a direct and proximate result of Defendants' conduct, Sleiman has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT I: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

75. Sleiman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

76. Throughout his employment, Sleiman was fully competent to perform his essential job duties.

77. Defendant treated Sleiman differently than other similarly situated employees based on his national origin.

78. Defendant violated R.C. § 4112.02(A) *et seq.* by discriminating against Sleiman due to his national origin.

79. On or about June 12, 2020, Defendant terminated Sleiman without just cause.

80. At all times material herein, similarly situated non-Brazilian employees were not terminated without just cause.

6

81. Defendant terminated Sleiman based on his national origin.

82. Defendant violated R.C. § 4112.01 *et seq.* when they terminated Sleiman based on his national origin.

83. As a direct and proximate result of Defendant's conduct, Sleiman has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

84. Sleiman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

85. Throughout his employment, Sleiman was fully competent to perform his essential job duties.

86. Defendant treated Sleiman differently than other similarly situated employees based on his national origin.

87. Defendant violated Title VII by discriminating against Sleiman due to his national origin.

88. On or about June 12, 2020, Defendant terminated Sleiman without just cause.

89. At all times material herein, similarly situated non-Brazilian employees were not terminated without just cause.

90. Defendant terminated Sleiman based on his national origin.

91. Defendant violated Title VII when they terminated Sleiman based on his national origin.

92. As a direct and proximate result of Defendant's conduct, Sleiman has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT III: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

93. Sleiman restates each and every prior paragraph of this complaint, as if it were fully restated herein.

94. As a result of Defendant's discriminatory conduct described above, Sleiman complained about the discrimination he was experiencing.

95. Defendant took no action to stop the discrimination.

96. Defendant dismissed Sleiman's complaints about discrimination. ("Dismissal")

97. The Dismissal was an adverse action.

98. Defendant made the Dismissal in retaliation for Sleiman's complaining about discrimination.

99. Sleiman's termination was an adverse action.

100. Defendant terminated Sleiman's employment in retaliation for Sleiman's complaining about discrimination.

101. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

102. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Sleiman, Sleiman suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IV: RETALIATION IN VIOLATION OF TITLE VII

103. Sleiman restates each and every prior paragraph of this complaint, as if it were fully restated herein.

104. As a result of the Defendant's discriminatory conduct described above, Sleiman complained about the discrimination he was experiencing.

8

105. Defendant took no action to stop the discrimination.

106. Sleiman's termination from Defendant was an adverse action.

107. Defendant terminated Sleiman's employment in retaliation for Sleiman's complaining about discrimination.

108. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

109. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Sleiman, Sleiman suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT V: DISABILITY DISCRIMINATION IN VIOLATION OF ADA**

110. Sleiman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

111. Sleiman suffers from Type II Diabetes.

112. Type II Diabetes constituted a physical impairment.

113. Sleiman' physical impairment substantially impaired one or more of HIS major life activities including working.

114. Sleiman is disabled.

115. In the alternative, Defendant perceived Sleiman as being disabled.

116. Alternatively, Defendant perceived Sleiman' condition to substantially impair one or more of his major life activities including working.

117. Defendant treated Sleiman differently than other similarly-situated employees based on his disabling condition.

118. Alternatively, Defendant treated Sleiman differently than other similarly-situated employees based on his perceived disabling condition.

119. Defendant terminated Sleiman' employment without just cause.

120. Defendant terminated Sleiman' employment based on his disability.

121. Alternatively, Defendant terminated Sleiman' employment based on his perceived disability.

122. Defendant violated ADA when it discharged Sleiman based on his disability.

123. Alternatively, Defendant violated ADA when it discharged Sleiman based on his perceived disability.

124. Defendant violated ADA by discriminating against Sleiman based on his disabling condition.

125. Alternatively, Defendant violated ADA by discriminating against Sleiman based on his perceived disabling condition.

126. Sleiman suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to ADA.

127. As a direct and proximate result of Defendant's conduct, Sleiman suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT VI: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

128. Sleiman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

129. Sleiman suffers from Type II Diabetes.

130. Type II Diabetes constituted a physical impairment.

131. Sleiman' physical impairment substantially impaired one or more of his major life activities including working.

132. Sleiman is disabled.

133. In the alternative, Defendant perceived Sleiman as being disabled.

134. Alternatively, Defendant perceived Sleiman' condition to substantially impair one or more of his major life activities including working.

135. Defendant treated Sleiman differently than other similarly-situated employees based on his disabling condition.

136. Alternatively, Defendant treated Sleiman differently than other similarly-situated employees based on his perceived disabling condition.

137. Defendant terminated Sleiman' employment without just cause.

138. Defendant terminated Sleiman' employment based on his disability.

139. Alternatively, Defendant terminated Sleiman' employment based on his perceived disability.

140. Defendant violated R.C. § 4112.01 *et seq*. when it discharged Sleiman based on his disability.

141. Alternatively, Defendant violated R.C. § 4112.01 *et seq*. when it discharged Sleiman based on his perceived disability.

142. Defendant violated R.C. § 4112.01 *et seq*. by discriminating against Sleiman based on his disabling condition.

143. Alternatively, Defendant violated R.C. § 4112.01 *et seq*. by discriminating against Sleiman based on his perceived disabling condition.

144. Sleiman suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

145. As a direct and proximate result of Defendant's conduct, Sleiman suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

**COUNT VII: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

146. Sleiman restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

147. On or around March 9, 2020, Ohio Governor Mike DeWine released Executive Order 2020-01D.

148. In Executive Order 2020-01D, Governor DeWine declared a state of emergency in Ohio due to the COVID-19 pandemic. Exec. Order No. 2020-01D, at 1.

149. In Executive Order 2020-01D, Governor DeWine identified COVID-19 as a "respiratory disease that can result in serious illness or death." Exec. Order No. 2020-01D.

150. In Executive Order 2020-01D, Governor DeWine identified that COVID-19 "can easily spread from person to person." Exec. Order No. 2020-01D,

151. In Executive Order 2020-01D, Governor DeWine identified COVID-19 as a "public health threat." Exec. Order No. 2020-01D, at 5.

152. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

153. A clear public policy exists and is manifested in R.C. § 4101.12 stating that "No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods

and processes reasonably adequate to render such employment and place of employment safe."

154. A clear public policy exists and is manifested in R.C. § 4101.12 stating that "No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters."

155. A clear public policy exists and is manifested in R.C. § 4101.12 stating that "No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

156. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if they are terminated in retaliation for reporting to their employer that they are forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. See also *Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

157. The Ohio Supreme Court recognized a clear public policy exists and is manifested in stating: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski v. Brocar Prod., Inc.,* 2002-Ohio-66, 94 Ohio St. 3d 77, 80, 760 N.E.2d 385, 388 (2002).

158. In failing to take any preventative measures to curtail to possible spread of COVID-19, Defendant created an unsafe work environment.

159. In failing to take any preventative measures to curtail to possible spread of COVID-19, Defendant violated these public policies.

160. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

161. In terminating Sleiman's employment as a result of his complaints, Defendant dissuaded employees from making complaints regarding workplace safety.

162. In dissuading employees from making complaints regarding workplace safety, Defendant jeopardized Ohio's public policy favoring workplace safety as established though *Pytlinski*, 94 Ohio St. 3d 77, at 80; and R.C. §§ 4101.11 & 4101.12.

163. Defendant's discharge of Sleiman jeopardizes these public policies.

164. Defendant's discharge of Sleiman was motivated by conduct related to these public policies.

165. Defendant had no overriding business justification to discharge Sleiman.

166. As a direct and proximate result of Defendant's conduct, Sleiman has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Joao Sleiman respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Defendants to retroactively restore Plaintiff to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Sleiman for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Sleiman's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha M. Breedlove*_____
Trisha M. Breedlove (0095852)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com

*Attorneys for Plaintiff Joao Sleiman*

## JURY DEMAND

Plaintiff Joao Sleiman demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha M. Breedlove*_____
Trisha M. Breedlove (0095852)